UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| CHARLOTTE YELEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:17CV00078 ACL |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Deputy Commissioner of Operations, ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Plaintiff Charlotte Yeley brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Yeley's severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform jobs existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

### I. Procedural History

This matter has a lengthy procedural history. Yeley filed her original application for SSI on June 17, 2005, claiming that she became unable to work on January 1, 2003, because of

diabetes, arthritis, and fibromyalgia. (Tr. 50-55, 112.) Yeley was 40 years of age at the time of her alleged onset of disability. Her claims were denied initially. (Tr. 16.) Following an administrative hearing, Yeley's claims were denied in a written opinion by ALJ Craig Ellis, dated November 21, 2006. (Tr. 10-15.) Yeley then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on September 24, 2007. (Tr. 2-4.)

Yeley sought review of the Commissioner's decision in the United States District Court for the Eastern District of Missouri. On March 18, 2009, the Court[1] reversed and remanded the case to the Commissioner for further development. (Tr. 257-81.) Specifically, the Court found that the ALJ's RFC determination was not based on substantial medical evidence. (Tr. 279.) The ALJ on remand was directed to formulate a new RFC based on the medical evidence in the record and to order additional medical information addressing Yeley's ability to function in the workplace. *Id.*

While Yeley's civil action was pending, she filed a second application for SSI in October 2007. (Tr. 580.) The second application was consolidated into one case following the Court's remand order. (Tr. 285.)

On December 8, 2009, ALJ Edward J. Pitts issued a decision finding that Yeley was not disabled. (Tr. 291-99.) Yeley filed written exceptions to that decision. (Tr. 305.) On July 9, 2011, the Appeals Council assumed jurisdiction of the case and again remanded the matter to an ALJ for further proceedings, finding that ALJ Pitts' decision did not resolve all of the issues pointed out in the remand order. (Tr. 305-07.)

A third administrative hearing was held on January 10, 2012, resulting in a denial of

---

[1] United States Magistrate Judge Lewis M. Blanton.

Yeley's claim by ALJ Thomas C. Muldoon on February 3, 2012. (Tr. 391-06.) The Appeals Council vacated the ALJ's decision due to ALJ Muldoon's failure to recontact treating sources and failure to obtain vocational expert testimony. (Tr. 415-17.)

A fourth administrative hearing was held on September 11, 2013. (Tr. 1104-45.) On September 25, 2013, ALJ Robert G. O'Blennis issued a decision finding that Yeley was not disabled. (Tr. 311-16.) The Appeals Council remanded the case to an ALJ for further proceedings on July 30, 2015, again finding that the ALJ had failed to comply with the remand order's directive to recontact Drs. Soeter and Varma. (Tr. 335-38.)

On September 26, 2016, following a fifth hearing, ALJ Stephen M. Hanekemp issued a decision finding Yeley not disabled. (Tr. 239-54.) On April 11, 2017, the Appeals Council declined to assume jurisdiction. (Tr. 232-35.) Thus, the September 26, 2016 decision of ALJ Hanekemp stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Yeley first argues that the ALJ "failed to properly develop the record after repeatedly directed to do so by this Court and the Appeals Council." (Doc. 15 at 9.) Yeley next argues that the ALJ's RFC finding is not supported by the record. *Id.* at 11. Finally, Yeley contends that the ALJ "failed to resolve a possible inconsistency between the [vocational expert]'s testimony and the Dictionary of Occupational Titles." *Id.* at 13.

## II. ALJ Hanekemp's Determination

The ALJ first found that Yeley has not engaged in substantial gainful activity since June 17, 2005, the application date. (Tr. 243.) In addition, the ALJ concluded that Yeley had the following severe impairments: non-dominant left shoulder bursitis and partial thickness tear of the

supraspinatus tendon with supraspinatus and infraspinatus tendinopathy, degenerative disc disease, diabetes mellitus, fibromyalgia, Osgood-Schlatter disease,[2] and anxiety. *Id.* The ALJ found that Yeley did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 244.)

As to Yeley's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a limited range of light work as defined in 20 CFR 416.967(b). She can lift/carry up to 20 pounds occasionally and 10 pounds frequently, stand/walk a total of 6 hours in 8, and sit a total of 6 hours in 8, except she can occasionally balance, kneel, crouch, crawl, stoop, and climb ramps and stairs; she cannot reach overhead with her non-dominant left upper extremity but can frequently reach in all other directions; she must avoid dangerous unprotected heights and dangerous unprotected moving machinery; she can have no concentrated exposure to pulmonary irritants (defined as no work in an environment with airborne particulates, e.g., grinding or sanding processes, and no caustic unventilated fumes); she can perform simple routine tasks; and, she can have occasional social interaction.

(Tr. 246.)

The ALJ found that Yeley's allegations regarding the extent of her limitations were not entirely credible. (Tr. 247.) The ALJ further found that Yeley had no past relevant work, but was capable of performing jobs existing in significant numbers in the national economy, such as routing clerk, mail clerk, and folding machine operator. (Tr. 254.) The ALJ therefore concluded that Yeley was not under a disability, as defined in the Social Security Act, since June 17, 2005. (Tr. 254.)

---

[2]"Osgood–Schlatter disease is a painful swelling of the bump on the upper part of the shinbone, just below the knee. https://medlineplus.gov/ency/article/001258.htm (last visited July 18, 2018).

The ALJ's final decision reads as follows:

> Based on the application for supplemental security income filed on June 17, 2005, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

*Id.*

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

> 5. Any corroboration by third parties of the plaintiff's impairments.
>
> 6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

## III.B. Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work

which exists … in significant numbers in the region where such individual lives or in several regions of the country."  42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."  *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 416.921(b).  These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or his

age, education, and work experience.  *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000).  The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.  *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. §416.920(a)(4)(v).  At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.  *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## IV.  Discussion

### A.  Development of the Record Pursuant to the Remand Order

Yeley first argues that the ALJ failed to develop the record as directed by this Court and the Appeals Council.  Defendant contends that the ALJ properly developed the record and considered the medical opinion evidence in accordance with the Appeals Council's remand order.

In its July 2015 Order, the Appeals Council directed the ALJ, in relevant part, to:

- Obtain updated evidence, as available, from the claimant's treating sources, including all clinical, laboratory, diagnostic, and treatment information.  As warranted and available, obtain updated medical source statements as to what the claimant can still do despite her impairments (20 CFR 416.912-13).
- Comply with the 2011 and 2013 Appeals Council Remand Order and attempt to re-contact the claimant's treating physicians Benjamin Soeter, M.D. and D.K. Varma, M.D. as set forth under 20 CFR 416.912(e) (see, Exhibit 9A and 17B), documenting all attempts in the record.  The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the treating sources.

(Tr. 337.)

The ALJ addressed the directives of the Appeals Council.  (Tr. 241.)  He stated that he

had complied with the orders "except for recontacting and obtaining medical source statements." (Tr. 241.) He first explained that he was unable to recontact D.K. Varma because Dr. Varma was deceased. *Id.*

The ALJ stated that he recontacted Chul Kim, M.D., and attempted to obtain a medical source statement, but Dr. Kim refused to provide one. *Id.* Dr. Kim stated that Yeley "has only been seen in our office for minor issues," and that he did not "have the appropriate records to complete the information that you requested." (Tr. 1059.)

As to Dr. Soeter, the ALJ indicated that Dr. Soeter merely resent his treatment notes that were already part of the record in response to the ALJ's request. (Tr. 241, 1072-77.) Yeley's attorney stated at the hearing that she had contacted Dr. Soeter and he replied that he was not qualified to express any opinions due to the length of time since he last saw Yeley. (Tr. 241, 1152.) The ALJ remarked in his opinion that he "agrees wholeheartedly with that," in light of the fact that Dr. Soeter had only seen Yeley on four occasions, it had been ten years since he last saw her, and Dr. Soeter noted few objective findings during Yeley's examinations. (Tr. 241.)

Yeley also argues that the ALJ should have sent her for a consultative evaluation in light of the ALJ's inability to obtain a RFC assessment from treating physicians. The remand order contained the following provisions relevant to Yeley's RFC:

- Further evaluate the opinion evidence pursuant to the provisions of 20 CFR 416.927 and Social Security Rulings 96-2p, 96-5p, and 96-6p and explain the weight given to such opinion evidence.
- Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 416.945 and Social Security Ruling 85-16 and 96-8p).

(Tr. 337.)

As a result of the remand order, the ALJ held a fifth administrative hearing on February 3,

2016. (Tr. 1146-75.) Prior to the hearing, Yeley's counsel submitted additional medical records from Dr. Kim, dated November 8, 2012 to September 30, 2014. (Tr. 945-1070.) These 57 additional pages of medical evidence regarding Yeley's impairments were not previously before the ALJ. As discussed above, the ALJ documented his efforts to obtain a medical source statement from Dr. Kim, as well as attempts to obtain additional information from Drs. Varma and Soeter. Accordingly, the Court finds the ALJ followed the Appeals Council's directive to obtain updated medical evidence.

With regard to Yeley's claim that the ALJ erred in failing to obtain consultative examinations, the remand order did not require that the ALJ do so. The undersigned will next consider whether such evidence was necessary in order to formulate Yeley's RFC.

B.     **RFC Determination**

Yeley contends that the ALJ's RFC finding is not supported by the record, because the ALJ failed to obtain a consultative examination. She further argues that the ALJ misunderstood the nature of fibromyalgia when assessing her limitations, in that the ALJ relied upon the absence of objective findings that are not diagnostic of fibromyalgia.[3]

The ALJ found that Yeley's fibromyalgia was a severe impairment. (Tr. 243.) He acknowledged that rheumatologists have identified the requisite tender points on examination. (Tr. 248-49.) For example, he noted that Yeley saw rheumatologist Geetha Komatireddy, M.D. in 2012, at which time Yeley had 16 tender points. (Tr. 249, 905.)

The Eighth Circuit has found that fibromyalgia has the *potential* to be disabling. *Forehand v. Barnhart*, 364 F.3d 984, 987 (8th Cir. 2004) (emphasis added). A diagnosis of

---

[3]Although the ALJ found that Yeley's shoulder impairment, degenerative disc disease, diabetes, Osgood-Schlatter disease, and anxiety were also severe impairments, Yeley primarily challenges the ALJ's findings with regard to her fibromyalgia. The Court will, therefore, focus its discussion on Yeley's fibromyalgia.

fibromyalgia alone is not sufficient to find that a claimant is disabled. *Perkins v. Astrue*, 648 F.3d 892, 900 (8th Cir. 2011) (not every diagnosis of fibromyalgia warrants a finding that a claimant is disabled). "While pain may be disabling if it precludes a claimant from engaging in any form of substantial gainful activity, the mere fact that working may cause pain or discomfort does not mandate a finding of disability." *Perkins*, 648 F.3d at 900.

Although Yeley does not directly challenge the ALJ's adverse credibility finding, this finding influenced his evaluation of Yeley's RFC. The ALJ discredited the credibility of Yeley's subjective complaints of disabling pain for the following reasons: (1) she has received minimal and conservative care; (2) objective testing and physical examinations revealed minimal findings; (3) she was repeatedly advised to exercise by treating providers but did not comply; and (4) she has a poor work history. (Tr. 248-52.) The undersigned finds that the ALJ complied with the process provided in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), and there is substantial evidence in the record to support the ALJ's conclusion regarding Yeley's credibility. *See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (ALJ can disbelieve subjective complaints if there are inconsistencies in the evidence as a whole and lack of corroborating evidence is just one of the factors the ALJ considers); *Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004) (claimant's credibility lessened when considering sporadic work record reflecting relatively low earnings and multiple years with no reported earnings); *see also Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (explaining that "[c]redibility determinations are the province of the ALJ" and the deference owed to such determinations); *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003) (holding that "[i]f an ALJ explicitly discredits the [plaintiff's] testimony and gives good reasons for doing so, [the reviewing court] will normally defer to the ALJ's credibility determination").

The ALJ conducted a thorough examination of the medical evidence of record and weighed the medical opinion evidence. "It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Tindell v. Barnhart*, 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart*, 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)). The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011).

The ALJ first discussed Dr. Soeter's evidence and opinions. Dr. Soeter saw Yeley on four occasions between August 2005 and June 2006. (Tr. 124-32.) On her initial visit on August 25, 2005, Yeley complained of left shoulder, bilateral knee, and low back pain. (Tr. 132.) She was taking Flexeril[4] and Lorcet[5] twice a day, which brought her pain down moderately well. *Id.* On examination, Dr. Soeter noted tenderness to palpation in the left subdeltoid bursa area, bilateral knee area, and low lumbar area. *Id.* Dr. Soeter diagnosed Yeley with left subdeltoid bursitis, bilateral knee apparent arthritis, left subacromial bursitis, and enthesopathy of the back. *Id.* He found that Yeley had no overall functional impairment. *Id.* Dr. Soeter recommended physical therapy, but Yeley indicated that she could not afford it. *Id.* Yeley underwent shoulder injections in September and October of 2005. (Tr. 130, 127.) On September 7, 2005, Dr. Soeter assessed an overall functional impairment of "0 to 2 out of 10." (Tr. 129.) Dr. Soeter's opinion regarding Yeley's functional impairment remained unchanged on her subsequent visits in October 2005 and June 2006. (Tr. 124-26.) On Yeley's last visit on June 9, 2006, she refused further injections. (Tr. 124.)

---

[4] Flexeril is indicated for the short-term treatment of muscle spasms. *See* WebMD, http://www.webmd.com/drugs (last visited July 18, 2018).
[5] Lorcet is indicated for the relief of moderate to severe pain. *See* WebMD, http://www.webmd.com/drugs (last visited July 18, 2018).

The ALJ indicated that he was assigning "some weight" to Dr. Soeter's opinion that Yeley has little to no functional limitations. (Tr. 252.) The ALJ stated that Dr. Soeter's opinion was consistent with Yeley's mostly normal or at most mildly abnormal imaging, and clinical signs, lack of strong medications, and conservative treatment. *Id.* He further stated that, "even so, the undersigned finds more than little to no functional limitations in the RFC above." *Id.*

The ALJ next discussed the opinion of consultative examiner Kevin Rankin, M.D. (Tr. 252, 134.) Yeley saw Dr. Rankin on March 8, 2006, with complaints of lower back pain and left lower extremity weakness. (Tr. 134.) Dr. Rankin stated that he believed Yeley's low back and left lower extremity pain was caused by nerve root compression and referred her to a neurosurgeon. *Id.* The ALJ gave "no weight" to Dr. Rankin's opinion. (Tr. 252.) He explained that no other treating physician has found signs of nerve root compression no imaging shows nerve root compression, and Yeley's subsequent course of treatment does not support Dr. Rankin's assessment. *Id.* Similarly, the ALJ assigned no weight to the January 2007 statement from Brian Schafer, M.D., that Yeley's positive antinuclear antibody test results could be consistent with lupus, because no other treatment provider has diagnosed Yeley with lupus. (Tr. 252, 773.)

The ALJ discussed the opinions of Emilia Corina Dulgheru, M.D. (Tr. 252.) Yeley saw Dr. Dugheru for a rheumatological evaluation on October 22, 2007, due to complaints of joint and leg pain. (Tr. 775.) On examination, Dr. Dugheru noted multiple bilateral tender points to palpation. (Tr. 778.) Dr. Dugheru diagnosed Yeley with fibromyalgia, osteoarthrosis of the lower leg, and Osgood Schlatter's disease. (Tr. 779.) She started Yeley on a trial of Lyrica[6] and recommended regular low impact aerobic exercise. *Id.* On a November 29, 2007 follow-up appointment, Yeley had a normal gait, and normal range of motion and strength. (Tr. 793.) Dr.

---

[6]Lyrica is indicated for the treatment of fibromyalgia. *See* WebMD, http://www.webmd.com/drugs (last visited July 18, 2018).

Dugheru recommended local injections for Yeley's knee pain, but Yeley declined them. *Id.* The ALJ indicated he was according "some weight" to Dr. Dugheru's findings and recommendation that Yeley exercise, because this recommendation has been repeated consistently throughout her course of treatment. (Tr. 252.)

With regard to Dr. Kim, the ALJ noted that Dr. Kim declined to provide a medical source statement in March 2016, explaining that Yeley had only been seen for "minor issues." (Tr. 252, 1059.) Yeley began seeing Dr. Kim on a regular basis in January 2010, for complaints including joint pain, fatigue, difficulty sleeping, and anxiety; and management of her diabetes.[7] (Tr. 249, 860.) Dr. Kim diagnosed Yeley with fibromyalgia and osteoarthrosis. (Tr. 249, 877.) Dr. Kim's treatment notes reveal mostly normal findings on examination, with only occasional tenderness in the neck, low back, and left shoulder. (Tr. 249, 881, 884, 939-44, 948-1005.) Dr. Kim prescribed medication, diet, and exercise for Yeley's conditions. *Id.* The ALJ indicated that Dr. Kim's statement that Yeley's treatment was only for minor issues was given "some weight," because Dr. Kim has been Yeley's "most consistent primary treatment provider since her alleged onset date." (Tr. 252.)

Finally, the ALJ discussed the opinions of James Spence, Ph.D., a state agency psychological consultant who reviewed the evidence at the initial stage of adjudication. (Tr. 253, 804-14.) Dr. Spence expressed the opinion on February 19, 2008, that Yeley's anxiety disorder was not severe. (Tr. 804.) The ALJ indicated that he was assigning "little weight" to this opinion. (Tr. 253.) He stated that more recent evidence, including the treatment notes of Dr. Kim, indicate that Yeley was found to be nervous on examination and was prescribed medication for anxiety. (Tr. 253, 1003-43.)

---

[7]Yeley had previously seen Dr. Varma for these complaints in 2008 and 2009, during which time Dr. Varma found few abnormalities other than painful range of motion. (Tr. 909-21, 932-37.)

The ALJ concluded that Yeley had the RFC to perform light work with the following additional limitations:

> She can lift/carry up to 20 pounds occasionally and 10 pounds frequently, stand/walk a total of 6 hours in 8, and sit a total of 6 hours in 8, except she can occasionally balance, kneel, crouch, crawl, stoop, and climb ramps and stairs; she cannot reach overhead with her non-dominant left upper extremity but can frequently reach in all other directions; she must avoid dangerous unprotected heights and dangerous unprotected moving machinery; she can have no concentrated exposure to pulmonary irritants (defined as no work in an environment with airborne particulates, e.g., grinding or sanding processes, and no caustic unventilated fumes); she can perform simple routine tasks; and, she can have occasional social interaction.

(Tr. 246.)

The ALJ explained that his RFC determination was supported by the objective medical evidence contained in the record. (Tr. 253.) He stated that treatment notes do not support Yeley's allegations of disabling conditions. *Id.* Additionally, he noted that the inconsistencies between Yeley's allegations and the medical evidence "do not enhance the persuasiveness of her alleged limitations." *Id.* The ALJ acknowledged that Yeley does experience "some level of pain and limitations, but the evidence supports only the extent described in the residual functional capacity above." *Id.*

The undersigned finds that the ALJ's RFC determination is supported by substantial evidence on the record as a whole. The ALJ had before him a voluminous medical record, reflecting over a decade of treatment from various providers. These records document Yeley's pain complaints, and note occasional findings of tenderness on examination, but a normal gait and range of motion. Yeley has declined suggested treatment, including physical therapy, pain injections, and pain medication. Dr. Kim characterized Yeley's treatment as arising from "minor issues." Notably, none of Yeley's numerous treating physicians ever placed any restrictions on

Yeley's activities, but instead, encouraged her to exercise.  *See Hensley v. Barnhart*, 352 F.3d 353, 356 (8th Cir. 2003) (finding no disability supported by the fact that no functional restrictions were placed on claimant's activities).  This evidence is consistent with the performance of a limited range of light work.

The Court recognizes that fibromyalgia has the potential to be disabling, and that there are no confirming diagnostic tests for this condition.  *See Forehand,* 364 F.3d at 987.  Each case must be judged on its own facts, and here, the Court concludes that the ALJ's decision falls "within the available zone of choice" and should not be disturbed.  *See, e.g., Heino v. Astrue,* 578 F.3d 873, 2009 WL 2615293, at *5 (8th Cir. Aug.27, 2009).

Additionally, an ALJ is not required to obtain further medical evidence unless the evidence is insufficient for the ALJ to make a determination as to whether the plaintiff is disabled.  *See* 20 C.F.R. § 404.1512; *Martise*, 641 F.3d at 926-27 (ALJ fails in duty to develop medical record only if the medical records before him do not provide sufficient evidence for him to determine whether claimant is disabled).  Here, the ALJ had sufficient evidence to determine whether Yeley was disabled.  The record contained treatment notes from various treating and examining providers spanning over a decade, opinion evidence, and results from objective testing with which to make a determination.  Thus, the ALJ was not required to obtain a consultative examination.  *See Tellez v. Barnhart*, 403 F.3d 953, 956-57 (8th Cir. 2005) (holding that the ALJ was not required to obtain additional medical opinions where "there [was] no indication that the ALJ felt unable to make the assessment he did and his conclusion [was] supported by substantial evidence.").

Finally, to the extent Yeley argues that the ALJ's decision violated the Court's remand order, the undersigned notes that the instant ALJ decision can be distinguished from the original decision resulting in remand.  The remand order noted that the original ALJ cited no medical

evidence in support of his decision and "provided no explanation whatsoever for his determination." (Tr. 278.) In this case, the ALJ provided an exhaustive summary of the medical evidence—including new evidence—and an explanation of how that evidence supported his determination. As such, the ALJ's decision did not violate the Court's remand order.

### C. Vocational Expert Testimony

Yeley finally argues that the ALJ failed to resolve a possible inconsistency between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"). Specifically, she contends that the RFC's preclusion on overhead reaching with her non-dominant left upper extremity may conflict with the jobs the vocational expert identified, because each requires frequent reaching.

After determining that Yeley had no past relevant work at step four, the ALJ relied on the testimony of a vocational expert to find that she could perform other work with her RFC. With regard to Yeley's reaching limitations, the ALJ stated: "With the non-dominant left arm no overhead reaching and then reaching in other directions is frequent." (Tr. 1169.) The vocational expert testified that Yeley could perform the requirements of unskilled, light jobs including routing clerk, mail clerk, and folding machine operator. (Tr. 254, 1170.) The vocational expert then testified as follows:

> I would just point out that the DOT does not differentiate between right or left extremities. It also does not differentiate the direction of reaching, so I'm relying on my experience for the opinion that the restrictions with the left dominant hand would still fit within these jobs.

(Tr. 1170.)

This case is distinguishable from the cases that Yeley cites in which the vocational expert did not address apparent inconsistencies between the DOT definition and a claimant's limitations. *See Moore v. Colvin*, 769 F.3d 987, 989-90 (8th Cir. 2014) (holding that a vocational expert "must

offer an explanation for any inconsistencies between her testimony and the DOT, which the ALJ may accept as reasonable after evaluation," where vocational expert, when asked if her testimony was consistent with the DOT, stated merely, "Yes, it is"); *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014) (noting, in vacating decision affirming denial of benefits, that "the record does not reflect whether the [vocational expert] or the ALJ even recognized the possible conflict between the hypothetical describing a claimant who could reach overhead only occasionally," and the job as described in the DOT).

Yeley also argues that the vocational expert's testimony was inherently inconsistent. She refers to the vocational expert's testimony in response to the ALJ's subsequent hypothetical involving a change from frequent reaching in other directions with the non-dominant left arm to only occasional reaching. (Tr. 1170-71.) The vocational expert responded that "with this type of position and typically with the unskilled we would need to be at a frequent level in all directions for both hands. So I think with that restriction dropping the reaching to occasional we would eliminate competitive level employment." (Tr. 1171.) Yeley contends that this statement contradicts the earlier testimony that Yeley could perform positions requiring frequent reaching despite her restriction to no overhead reaching with the left arm.

Although the two statements do appear contradictory in isolation, when considered in their full context, they are compatible. In making the second statement, the vocational expert was responding specifically to the hypothetical involving only occasional lifting in other directions with the left arm. The vocational expert's statement appears to be an attempt to communicate that the jobs he previously cited require frequent rather than occasional lifting *in all other directions*, not that they require frequent *overhead* lifting. Thus, the ALJ did not commit reversible error in failing to request clarification from the vocational expert on this issue.

## Conclusion

The ALJ complied with the directives of the remand order and attempted to recontact Yeley's treating physicians to obtain further evidence. The delay Yeley has experienced in obtaining a final decision in this matter due to errors of the Commissioner is regrettable, but does not affect the outcome in this matter. The ALJ properly weighed the medical opinion evidence in determining the severity and resulting limitations of Yeley's impairments. He then relied on the testimony of a vocational expert to find that Yeley was capable of performing other work existing in significant numbers in the national economy. Although Yeley articulates why a different conclusion might have been reached, the ALJ's decision, and, therefore, the Commissioner's, was within the zone of choice and should not be reversed for the reasons set forth above. *See Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017) (concluding that "[w]hile it was not surprising that in an administrative record which exceeds 1,500 pages, [claimant] can point to some evidence which detracts from the Commissioner's determination, good reasons and substantial evidence on the record as a whole support the Commissioner's RFC determination").

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 11th day of September, 2018.